**Paul D'AMICO, Plaintiff, Appellant,**

v.

**COMPASS GROUP, USA, INC. and Cary Orlandi, Defendants, Appellees.**

No. 02–1800.

United States Court of Appeals, First Circuit.

Dec. 9, 2002.

---

Robert S. Wolfe with whom Wolfe Associates, P.C. was on brief for appellant.

Christopher A. Kenney with whom Margaret H. Paget and Sherin and Lodgen LLP were on brief for appellees.

Before LIPEZ, Circuit Judge, COFFIN and STAHL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

This appeal arises from an action brought in the United States District Court for the District of Massachusetts. Plaintiff-appellant Paul D'Amico is a long time former employee of Compass Group USA, Inc. ("Compass"), a provider of corporate cafeteria services. Defendants-appellees are Compass and its regional vice president, Cary Orlandi. Jurisdiction is based on the presence of a federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332.

The federal question raised was whether defendants retaliated against plaintiff for overstaying a medical leave, therefore violating the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2619. State law issues alleged were breach of contract and implied covenants of good faith and fair dealing, discrimination against the handicapped, Mass. Gen. Laws ch. 151B, § 16(4), interference with advantageous business relations, and intentional infliction of emotional distress. These would be reachable under diversity jurisdiction if such jurisdiction were established; if not, they would be subject to the principles governing pendent state law claims under 28 U.S.C. § 1367.

After considerable discovery and a hearing, the district court granted summary judgment to defendants on plaintiff's FMLA claim and dismissed the state law claims without prejudice. Plaintiff-appellant raises two issues on appeal. First, did the court err in granting summary judgment on his FMLA claim? Second, did it err in dismissing the state law claims despite the existence of diversity jurisdiction?

### I. *The FMLA Claim*

We conclude that the district court did not err in granting summary judgment

on the FMLA claim and affirm that ruling essentially for the reasons expressed by the district court in its opinion. We do not necessarily accept its conclusion that appellant met the FMLA threshold requirements of suffering from a "serious health condition," 29 U.S.C. § 2612(a)(1)(D), or of being "unable to perform the functions of [his] position," *id.* But we do agree that appellant failed to proffer sufficient evidence to convince a fact finder that his overstaying—by two days—the one-week leave prescribed by his doctor was causally related to any subsequent adverse action taken by his employer.

We add only the following. Not only was appellant's action in exceeding his allowed leave by two days (February 9 and 10, 1998) a very short time, but it did not result in any loss of pay or provoke any critical comment or recrimination from Orlandi, who had, on February 2, given appellant a "competent plus" evaluation and a 3.5% raise.

Moreover, the two interim adverse actions preceding appellant's termination, a year after the medical leave at issue, bear no indicia of leave-motivated retaliation. Both were issued by Canning, appellant's immediate superior. Both were specific in shortcomings noted. The Employee Counseling Report of March 23 was endorsed by appellant, who responded "I will comply . . . ." The April 16 demotion form acknowledged as appellant's "strengths" his years of service and past performance and attributed his present problems to his "current personal life problems that have him stressed out over his family." In neither case was there any reference, explicit or implied, to appellant's leave taking.

Finally, it is clear from the record that from the first time, in December of 1998, that appellant went over Orlandi's head and sought help from Compass's CEO,

Orlandi was unremitting in voicing his extreme displeasure and his intention to make life difficult for appellant. The dominance of this obvious motivation, together with all the other evidence, simply leaves no room for a reasonable jury to find that a remote and minimal medical leave dispute played any role in his termination.

## II. *The Diversity Claim*

The diversity claim is of such a rare and unlikely genre that case law has proven unhelpful. It is the story of a strategy miscarried through initial inadvertence and subsequent intentional non-disclosure. Diversity jurisdiction was set forth in pleadings, ignored in argument, overlooked by the district court, and consciously abandoned in post-judgment submissions.

The story begins with a complaint that adequately pleaded the existence of complete diversity and the requisite amount. Memoranda submitted to the district court by both parties included argumentation on the state law claims, but without any reference to their jurisprudictional foundation.

The stance taken by the district court was made clear from the start when it began its Memorandum and Order on Defendants' Motion for Summary Judgment by stating that federal jurisdiction was based on alleged violations of the FMLA, and noting that the complaint also set forth four "supplemental" state law claims. At the end of its opinion, it stated in a final footnote, "While the court would ordinarily proceed to decide the pendent state-law claims (as the case was originally filed in federal court), I will not do so in this instance." The court then briefly gave its reason for feeling that the state court was the more appropriate forum.

After the district court's judgment, appellant moved for reconsideration of the denial of the FMLA claim, with no mention of any claim based on diversity juris-

diction. Appellees opposed this motion and added a "Cross Motion for Reconsideration of Pendent State–Law Claims." They asked the court to rule on the state law claims "as a matter of judicial economy." Appellant succeeded in defeating the cross motion as untimely, it having been filed beyond ten days of judgment. Appellant went further and urged the court to reconsider dismissal of the federal claim because he felt that the court's characterization of the motive of Orlandi as "a vindictive settling of personal accounts," while not denoting an FMLA violation, might determine state court outcome even though the dismissal was without prejudice.

Appellant's brief on appeal merely states that, since jurisdiction is neither a right nor a remedy, it was not subject to waiver by him. He therefore insists on decision of the state claims—by us, it appears. Appellees did not respond to this issue in their brief, but expressed a willingness at argument that the state law claims be remanded to the district court for decision. We asked counsel for appellant his reasons for not raising this issue before the district court.

He responded frankly that

my own stratagem, which may have been flawed, was that since [the court] had thought so little of our FMLA claim and the pretextual arguments that we had made, that I thought he was going to be bound by those decisions and consequently rule against me on the state claims. So, it was my personal feeling to have this matter go up before you.

He added that he had hoped we would instruct the district court to reexamine the pretext issue both as to the state and the federal claim.

What this recitation reveals is a confusion between power to decide and necessity or appropriateness of decision. While the absence of subject matter jurisdiction is a bar to decision, its presence does not compel decision. For example, no one would argue that, had the tables been turned and the state law claims been considered while the FMLA claim had been overlooked by counsel, the district court was nevertheless obligated to decide it. A jurisdictional allegation and proof enable the advocate to invoke that jurisdiction. But this is no license to allow a jurisdictional concept to lie in limbo, and to be raised anew only after the judge has been misled by both the action and the inaction of counsel.

The unfairness to the district court of appellant's theory is manifest. To allow, even encourage, causes of action to remain hidden and then resurface as not only a basis for appeal but as matters for appellate decision on the merits runs contrary to common sense, fairness, and judicial economy.

■ We hold that appellant waived any right to advance a cause of action based on diversity jurisdiction.

*Affirmed.*